**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

UNITED STATES OF AMERICA,

    Plaintiff,

vs.                                       CASE NO. 3:12-cr-141-J-34TEM

MILTON SMALL II,

    Defendant.

_____

**REPORT AND RECOMMENDATION**[1]

This matter is before the Court on Defendant's Motion to Suppress Statements (Doc. 26) and the United States' Supplemental Response in Opposition (Doc. 30). The Court held a hearing on the motion on December 14, 2012 (Docs. 31 & 37).[2] For the reasons described herein, the undersigned respectfully **RECOMMENDS** Defendant's Motion to Suppress Statements (Doc. 26) be **DENIED.**

**Issue Raised**

Defendant was arrested after a search warrant on his residence was executed. Some degree of force was used in accomplishing the arrest and Defendant challenges whether *Miranda* rights were administered and whether his statements were made

---

[1] As a matter of course, within fourteen (14) days after service of this document, specific, written objections may be filed in accordance with 28 U.S.C. § 636, Rule 59, Federal Rules of Criminal Procedure, and Rule 6.02, Local Rules, United States District Court, Middle District of Florida. Failure to file a timely objection waives a party's right to review. Fed. R. Crim. P. 59.

[2] References to the transcript of that hearing (Doc. 29) are hereinafter referred to as "Tr." followed by the page number that is set forth by the court reporter.

voluntarily (Doc. 26).  The United States argues Defendant was properly advised of his *Miranda* rights orally; he knowingly, voluntarily and intelligently waived the rights; and a signed waiver is not necessary.  It also argues there was no coercion beyond the initial force used in apprehension and that Defendant initiated the discussion with police (Doc. 30).

## **Testimony**

Lt. Richard P. Buoye of the Jacksonville Sheriff's Office ("JSO") testified that he was the commanding officer of the tactical narcotics squad in the execution of a search warrant on July 20, 2012 at 9153 Sixth Avenue (Tr. 7-8).  Twelve officers were present to surround the house at the beginning (Tr. 18, 41).  Buoye said officers tried knocking on the door, but when no one answered, officers breached the front door (Tr. 9).  Two individuals in the house were ordered to come outside, get down on the ground and crawl toward the officers (Tr. 9, 27).  Buoye explained that procedure is used for the safety of the officers (Tr. 43).  One of the two persons, Defendant Milton Small II, crawled out, but kept talking to officers and refused to follow orders to lie flat on the ground with his hands behind his back (Tr. 9-10, 26-27, 45-46).[3]  Buoye said Detective R.W. Crotty used a toe tick to the brachial nerve to place Small flat on the ground (Tr. 10).  Small was then handcuffed (Tr. 10-11) and officers entered the house to conduct the search (Tr. 11).  After the arrests and entry into the house only about three officers remained (Tr. 63).

Buoye said Small later lodged a complaint concerning the force applied, alleging he

---

[3] In response to questioning by the Court, Buoye testified that the reason for ordering a suspect to lie flat on the ground is because it is difficult for a person lying on his stomach to get up and run away (Tr. 49).

was knocked unconscious (Tr. 14, Gov't. Ex. 1).  However, Buoye said he and other officers noted Small kept talking the entire time (Tr. 15).  Buoye said Crotty did not apply full force to the kick, but rather a sufficient amount to obtain compliance (Tr. 49).  Buoye said Crotty was exonerated of any misconduct (Tr. 13).  A photograph of Small after he was arrested and taken back in the house was introduced (Tr. 61; Gov't Ex. 2).  It appears to show a small cut or abrasion about an inch below the left eye, a slight cut on a nostril and some dried blood on his lip.

Donald Nixon, a narcotics detective, testified that he had made undercover buys of narcotics from Defendant at the house (Tr. 53).  After the Defendant had been secured with handcuffs, Nixon said he took charge of him, returning him to the house (Tr. 59).  Both the Defendant and the second man were seated on the living room couch (Tr. 59).  The Defendant recognized Nixon as a past customer and commented, "Man, you were slick, you were pretty cool." (Tr. 60).  Nixon said Small had dirt on him, but did not appear injured (Tr. 60), nor high on drugs (Tr. 115).  Nixon said Small did not mention any injuries (Tr. 62), nor ask for medical attention (Tr. 118).

The detective did not ask him any questions, but Small mentioned he would like to "help himself out" which Nixon understood to mean that he wanted to work for the police to help "him get off the charges he was on." (Tr. 62, 98-99).[4]  At that point, Nixon said he removed Small to a bedroom so the second man[5] could not hear what they were talking about (Tr. 62-63).  Only he and Small were in the room (Tr. 78-79).  At that point Nixon

---

[4] Later in his testimony Nixon said he could not remember whether he or the Defendant first raised the issue of cooperating (Tr. 79).

[5] The second man was believed to have mental issues (Tr. 31-32).

read the Defendant his *Miranda* rights from a card Nixon carries on his vest (Tr. 63; Gov't Ex. 5).[6] Small indicated he understood his rights (Tr. 64-65) and agreed to waive his rights (Tr. 82). Nixon told Small that he would have to be honest with Nixon if he wanted to work with him (Tr. 65).

The detective then asked if there was anything in the house that the officers needed to know about, and Small said there was a bag of marijuana and a gun in a closet in another room (Tr. 65). A few minutes later another officer came to him and said they had found a bag of marijuana and two guns in the closet (Tr. 65). When Nixon confronted Small with the fact two guns were found, Small said he didn't mean there was just one. Nixon asked him if there were any other guns in the house and he said, "No, that's all I have." (Tr. 66).

The detective said they continued to discuss cooperation and Small did not complain about any discomfort or pain (Tr. 66). After a short time, another officer returned to the room and told Nixon they had found a third gun in the closet (Tr. 67). Small said he had forgotten about it, but that it belonged to a friend (Tr. 67). Nixon then talked with his lieutenant who said he could not approve cooperation because Small had not been truthful

---

[6] The card, entitled "Constitutional Rights," reads:

You have the following rights under the United States Constitution:
    (1) You have the right to remain silent.
    (2) Anything you say can be used against you in court.
    (3) You have the right to talk to an attorney before we ask you any questions and to have an attorney present during questioning.
    (4) If you cannot afford an attorney, one will be appointed for you at no cost before any questioning begins.
    (5) If you decide to answer questions now, you have the right to stop at any time and consult with an attorney.

(Tr. 68).

Defendant is charged with six violations of federal law, four counts of controlled substance violations and two counts of firearm violations (Doc. #1).

## Analysis

### *Whether* Miranda *warnings were administered*

The Fifth Amendment provides, "No person . . . shall be compelled in any criminal case to be a witness against himself."  U.S. CONST. amend. V.  The Fifth Amendment permits a person to refuse to testify against himself at a criminal trial and to refuse to answer questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings.  *Minnesota v. Murphy*, 465 U.S. 420, 426 (1984).  *Miranda v. Arizona* extended the Fifth Amendment privilege against compelled self-incrimination to persons subjected to custodial interrogation.  *Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966).  *Miranda* held custodial interrogation was inherently coercive and therefore created a presumption that a statement made while subject to custodial interrogation was coerced, unless a suspect was specifically informed of certain rights and freely decided to forgo those rights.  *Id.* at 467; *New York v. Quarles*, 467 U.S. 649, 654 (1984).  Prior to interrogation, a person in custody must be warned "that he has a right to remain silent, that anything he says can be used against him in a court of law, that he has the right to the presence of an attorney, and that if he cannot afford an attorney one will appointed for him prior to any questioning if he so desires."  *Miranda*, 384 U.S. at 479.  These warnings are required to provide "practical reinforcement" for the Fifth Amendment privilege against self- incrimination.  *Michigan v. Tucker*, 417 U.S. 433, 444 (1974).

The United States does not dispute the Defendant was in custody, and therefore subject to *Miranda*'s requirements. Detective Nixon testified he administered *Miranda* rights from a card he carries (Gov't Ex. 5). Nixon testified the Defendant instigated the conversation by indicating he would like to cooperate to earn some benefit for himself. At that point Nixon moved him to another room and advised him of his rights. Defendant indicated he understood and wanted to cooperate. Nixon warned he would have to be fully truthful. The Defendant stated there was a firearm in a closet. Officers found a second firearm. The Defendant said he hadn't meant there was just one firearm. Nixon asked if there were others and Defendant said no. Officers later found a third firearm. Nixon said his lieutenant then declined to approve using the Defendant's cooperation.

The Court would note that the motion seeks to suppress Defendant's statements. Even if it were granted, because the police had a search warrant, the firearms (and marijuana) inevitably would have been discovered. Nonetheless, the Court finds *Miranda* warnings were properly administered. Nixon testified that for 23 years it has been his standard practice to read the rights from a card when he sits down to interview a suspect (Tr. 63). He asks for a written waiver if he is in the office and has the waiver form available, but usually does not carry it on the street (Tr. 81). No evidence was introduced to contradict his testimony and the Court finds it credible.

<u>*Whether Defendant's statements were made voluntarily*</u>

Even absent the accused's invocation of his right to remain silent or to have an attorney present during question, the accused's statement during custodial interrogation is inadmissible unless the accused "voluntarily, knowingly and intelligently" waived his *Miranda* rights. *United States v. Glover*, 431 F.3d 744, 748 (11th Cir. 2005) (per curiam)

(internal citations omitted); *Berghuis v. Thompkins*, 130 S.Ct. 2250, 2260 (2010). In this regard, the United States must prove by a preponderance of the evidence that Defendant's waiver was voluntary. *Id.*

The Supreme Court has established a two prong test for determining whether a defendant's waiver was made voluntarily, knowingly and intelligently. *Moran v. Burbine*, 475 U.S. 412 (1986). First, the court must ascertain if the defendant relinquished his *Miranda* rights voluntarily in that he made a free and deliberate choice that did not result from intimidation, coercion or deception. *Id.* at 421. Second, the court must find the waiver was made with a full awareness of both the nature of the rights being abandoned and the consequences of the decision to abandon them. *Id.* When considering these factors, the court looks to the totality of the circumstances surrounding the questioning of a defendant. *Id.; United States v. Thompson*, 422 F.3d 1285, 1295-97 (11th Cir. 2005).

In consideration of the "totality of the circumstances," a court should consider such factors as: police coercion; length and continuity of interrogation; the suspect's maturity, education, physical condition, and mental heath; and whether the suspect was advised of his *Miranda* rights. *Castillo-Mejia v. Sec'y, Dept. of Corr.*, No. 8:07-CV-1585-T-27MAP, 2010 WL 2836744, at *2 (M.D. Fla. July 19, 2010)[7] (citing *Withrow v. Williams*, 507 U.S. 680, 693-94 (1993)). "Whether [a defendant] understood his *Miranda* rights is a factual question subject to the presumption of correctness." *Id.* (internal citations omitted). Similarly, an individual's competence to waive his rights "is also a factual determination entitled to the presumption of correctness." *Id.* (internal citation omitted). Once it is

---

[7] Unpublished opinions are not considered binding authority; however, they may be cited as persuasive authority pursuant to the Eleventh Circuit Rules. 11th Cir. R. 36-2.

determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew he could stand mute and request a lawyer, and that he was aware of the government's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law. *Id.* at 422-23.

In the instant case, this was a brief interview shortly after the Defendant had been taken into custody during the execution of a search warrant. Only one police officer conducted the interview, even though a dozen officers were present at the beginning of the execution of the search warrant. Any force administered was done while officers were trying to get Defendant to comply with their commands to lie flat on the ground and place his hands behind his back. The evidence showed that force was administered by a controlled kick to a nerve on the side of the neck to stun Defendant, and that he may have suffered two or three small cuts or abrasions. Defendant was not kicked during the interrogation or in an effort to force him to confess.

The undersigned finds the reasoning of the Eighth Circuit in *United States v. Carroll*, 207 F.3d 465 (8th Cir. 2000) to be very persuasive. In *Carroll*, the defendant argued his post-arrest incriminating statement was involuntary and obtained through police coercion because the police had used physical force against him and sprayed him with mace during his arrest. *Id.* at 472. The court held the defendant's statements were properly admitted at trial, reasoning:

> This is not a case where the police beat a confession out of a defendant, but rather a situation where the police were required to use force to subdue a fighting suspect, and then, after the suspect was under control, asked him where they could find his gun. There is no evidence in the record to suggest that [defendant] answered because he feared the police would use further force against him.

*Id.* *See also United States v. Young*, 377 Fed. Appx. 965, 969 (11th Cir. 2010) (finding officer's use of mace was not intended to elicit incriminating statements from defendant but intended to subdue defendant who refused to comply with officers' commands, and defendant's subsequent statements were made voluntarily); *Watson v. DeTella*, 122 F.3d 450, 454 (7th Cir. 1997) (finding voluntary the statements of a defendant who was kicked during arrest after he refused to raise his hands and show officers he no longer had a weapon); *United States v. Meirovitz*, 918 F.2d 1376, 1279 (8th Cir. 1990) (finding *Miranda* waiver voluntary where defendant was thrown to the floor and handcuffed when apprehended and then seated with one wrist handcuffed to a chair during interrogation); *Maixner v. Rudek*, No. CIV-10-1027-W, 2012 WL 512402, at *6 (W.D. Okla. Jan. 10, 2012) (finding *Miranda* waiver voluntary where defendant was questioned at hospital prior to receiving treatment after officers used Taser gun and physical force, including blows with their fists, to take custody of defendant); *United States v. Zhong Liang Li*, No. 1:10-CR-31-TCB-CCH-3, 2010 WL 3881368, at *4 (N.D. Ga. Sept. 10, 2010) ("While with hindsight one might conclude that Defendant and his brother could have been safely arrested with a lesser show of force, the police are entitled to exercise their judgment as to the number of officers to use and the weapons to display in order to make a safe arrest."); *United States v. Irons*, 646 F.Supp.2d 927, 965 (E.D. Tenn. 2009) (finding circumstances of arrest, during which defendant was stunned with a Taser for failing to comply with order to get down, did not influence defendant during interview occurring thirty minutes later); *United States v. Flores*, No. 1:05-cr-558-WSD-JFK, 2007 WL 2904109, at *60-61 (N.D. Ga. Sept. 27, 2007) (finding *Miranda* waiver voluntary where defendant was "confronted by armed officers, shot at [three times], handcuffed and held for three hours without food or water").

While he was interviewed, Small was not threatened in any way. He initiated the conversation by indicating he might cooperate. He was handcuffed during the questioning, however, it appears the questioning was conducted in a calm, non-confrontational manner. See *United States v. Thompson*, 422 F.3d 1285, 1295-96 (11th Cir. 2005) ("Sufficiently coercive conduct normally involves subjecting the accused to an exhaustingly long interrogation, the application of physical force or the threat to do so, or the making of a promise that induces a confession." (quoting *United States v. Mendoza-Cecelia*, 963 F.2d 1467, 1475 (11th Cir.1992))). An interrogating agent can encourage cooperation and not invalidate a waiver of *Miranda* rights. *See Colorado v. Connelly*, 479 U.S. 157, 170 (1986) ("[T]he Fifth Amendment privilege is not concerned 'with moral and psychological pressures to confess emanating from sources other than official coercion.'" (quoting *Oregon v. Elstad*, 470 U.S. 298 (1985))); *United States v. Davidson*, 768 F.2d 1266, 1271 (11th Cir. 1985)(statement to an accused that his "cooperation would be passed on to judicial authorities and would probably be helpful to him is not a sufficient inducement so as to render subsequent incriminating statement involuntary"); *United States v. Graham*, 323 Fed. Appx.793, 797 (11th Cir. 2009) (citing with approval *United States v. Jaswal*, 47 F.3d 539, 542 (2nd Cir. 1995) which held, "[T]here is no inconsistency between the required warning that a defendant's statement may be used against him and a further statement that cooperation can help him. Both are true."). Additionally, Small's prior experience with the criminal justice system belies his assertion that his statements were not knowingly and voluntarily made.[8]  *See Heynard v. McDonough*, 459 F.3d 1217, 1241 (11th Cir. 2006)

---

[8] The undersigned notes Small was previously convicted of crimes in 2004 and 2007
(continued...)

(holding confession voluntary under totality of circumstances, including fact that defendant had previous experience with the justice system); *United States v. Astello*, 241 F.3d 965, 966 (8th Cir. 2001) (upholding district court's finding that defendant's "prior dealings with the criminal justice system would have allowed him to more fully comprehend the serious situation in which he found himself and [rendered him] less likely to be intimidated by the agents"); *United States v. Kerr*, 120 F.3d 239, 241 (11th Cir. 1997) (holding confession was knowing and voluntary where defendant "had a substantial history of involvement in the Juvenile Justice System and, in fact, was a run-away from a state facility"); *Lord v. Duckworth*, 29 F.3d 1216, 1222 (7th Cir. 1994) (holding confession voluntary and noting defendant "had experience with the criminal justice system by virtue of two prior felony convictions").

Considering the totality of circumstances in this case, the undersigned finds no ground for concluding Small's statements were coerced, compelled or involuntary. The undersigned does not find the conduct of the agents amounted to coercive police conduct sufficient to show Small's "will [was] overborne and his capacity for self-determination critically impaired." *Colorado v. Spring*, 107 S.Ct. 851, 857 (1987). When *Miranda* warnings are properly given to a suspect, as they were in this case, then "thereafter the suspect's choice whether to exercise his privilege to remain silent should ordinarily be viewed as an 'act of free will.'" *Oregon v. Elstad*, 470 U.S. 298, 310-11 (1985) (citing *Wong Sun v. United States*, 371 U.S. 471, 486 (1963)). "[C]ases in which a defendant can make a colorable argument that a self-incriminating statement was 'compelled' despite the fact

---

[8](...continued)
in the Circuit Court, Fourth Judicial Circuit, in and for Duval County, Florida (Doc. 1, at 3).

that the law enforcement authorities adhered to the dictates of Miranda are rare." *Berkemer v. McCarty*, 468 U.S.420, 433 n.20 (1984).  This case is not one of those rare cases.  Small's statement was made with full knowledge of his rights and the consequences of his waiver thereof.  The tactics used by the agents did not overbear Small's will or impair his capacity for self-determination.  Accordingly, the undersigned concludes Small knowingly, intelligently and voluntarily waived his *Miranda* rights.

Based on the foregoing, the undersigned respectfully **RECOMMENDS** Defendant Milton Small II's Motion to Suppress Statements (Doc. 26) be **DENIED**.

**DONE AND ENTERED** at Jacksonville, Florida this 11th day of February, 2013.

*Thomas E. Morris*
THOMAS E. MORRIS
United States Magistrate Judge

Copies to:
Hon. Marcia Morales Howard
Counsel of record